THE STATE, THE NEW YORK AND ERIE RAILROAD COM-
PANY AND NATHANIEL MARSH, PROSECUTORS, v. JOHN
B. HAIGHT, COLLECTOR, ETC., FOR JERSEY CITY.

Ferry boats, owned by a foreign corporation, enrolled in the New York
custom house, used for carrying freight and passengers between Jersey
City and New York, and having no permanent location in Jersey
City, are not liable to be taxed there; such property cannot be said
to be *situate* in any township or ward.

*Certiorari.*   In matter of taxation.

Certain ferry boats, owned by the New York and Erie
Railroad Company, and plying between New York and Jer-
sey City, were assessed by the authorities of Jersey City as
property subject to taxation. It appeared they belonged to
a foreign corporation, and were regularly enrolled in the cus-
tom house in New York.

The prosecutors sought to set aside the assessment, for the
following reasons :

1. That the said ferry boats should be taxed in New York,
and not in this state.

2. That they were taxed, during the period covered by the
assessment now complained of, in the city of New York, and
the tax was paid in that jurisdiction.

3. That said ferry boats were registered in the custom-house
of the city of New York, and district of New York, being the
district which comprehended the port to which the boats be-
longed, at the time of said assessment for tax, and have thence
continued to be so registered.

4. That a valuation was not put on each boat, and the
assessment is uncertain and void.

For the prosecutors, *I. W. Scudder.*

For the defendant, *R. D. McClelland.*

The opinion of the court was delivered by

VAN DYKE, J.   The *certiorari* in this case brings up for

consideration an assessment and taxation, by the authorities of Jersey City, on the ferry boats of the New York and Erie Railway Company, which ply between New York and Jersey City. These boats are all owned by a corporation belonging to, and chartered by the state of New York. They are all enrolled in the custom house in the city of New York; and they are used for carrying passengers, freight, &c., between that city and Jersey City, some of which is of a local character; but most of their business, it is supposed, is in connection with the Erie railway itself. None of the boats appear to have been built in this state, nor to have any permanent location here, except that they lie at, and are fastened to the piers on this side, long enough to deliver and receive their passengers and freight, or to wait for their arrival, and in a few instances, one or more of them have remained on this side long enough to receive repairs.

Our act relative to taxes directs, that when the owner of personal property shall be a nonresident of this state, such property shall be taxed in the township or ward where the same may be *situate;* but I am unable to see how these steamboats can be considered as being *situated in* the state of New Jersey at all. The personal estate of foreign owners, to be so situated as to be subject to taxation within the meaning of the act, must have some permanent location here, for the time being at least. It cannot be, I think, that all the vessels belonging in other states, and owned by citizens thereof, visiting our shores, but never coming upon them daily and several times a day, and returning back again as often as they come, can be considered as *situated* here. The establishment of the principle contended for by the assessor in this case would seem to authorize him in assessing everything that he can find within his official limits at any time while making his assessments; which would render it unsafe for a stranger to our soil to visit it with his property during that time. The law does not contemplate any such thing. It is only intended to tax such personal property of foreigners, as is actually located or used within the state with some-

thing like permanency, and not having its actual location or home somewhere else. These boats have no actual location or place of residence, so to speak, in this state; but they *have* a location and home in the state of New York, and cannot, I think, in any sense, be considered as belonging here as the objects of taxation by us.

I do not think it wise, either as a matter of comity or of policy, to press these border questions, when they contain any considerable amount of doubt. They are certainly calculated to provoke retaliatory proceedings on the other side; and if we may tax the ferry boats of the Erie company, I do not see why New York may not also tax the ferry boats of the New Jersey Railroad Company. One hostile act of the kind is quite likely to produce another, and in this way much bad feeling and bad neighborhood will be engendered. Friendly feeling and pleasant intercourse with our neighbors, and especially with our sister states, should by all means be cultivated, and all proceedings calculated to produce the contrary should be avoided, if possible.

I think, therefore, these assessments should be set aside.

Assessments set aside.