**MURCHIE v. DELANEY, Collector of Internal Revenue.**

Civ. A. No. 7321.

United States District Court
D. Massachusetts.

Jan. 25, 1949.

R. G. Dodge and W. A. Barrows, both of Boston, Mass., for plaintiff.

William T. McCarthy, U. S. Atty. and W. Arthur Garrity, Jr., Asst. U. S. Atty., both of Boston, Mass., for defendant.

FORD, District Judge.

This is an action by Guy Murchie, as executor of the will of his late wife Ethel Adine Murchie, against Denis W. Delaney, Collector of Internal Revenue, to recover an estate tax alleged to have been illegally collected by the defendant. Both parties agree that the only issue between them is one of the proper construction of the provisions of 26 U.S.C.A. § 861(a), and each has filed a motion for summary judgment on the basis of the pleadings and the affidavit of Guy Murchie.

Mrs. Murchie, of whose estate her husband, the plaintiff here, is executor, was throughout her whole life a citizen of Canada, and from 1931 until her death a resident of Nassau in the Bahamas. She owned a valuable home there at which the Murchies spent five or six months of each year, devoting the warmer months of the year to travel in various parts of the world. The summers of 1941 and 1942 they spent in New Brunswick. It was there that in 1941 Mrs. Murchie was stricken with coronary thrombosis, and she was still in poor health when they spent the summer there in 1942.

About November 15, 1942 they left Canada and went to Winter Park, Florida, where they planned to stop a short while in order to break their journey to Nassau and in order to put Mrs. Murchie under the care of a Dr. Jewett who had been recommended to them. They hired a house there which they arranged to turn over to a friend for the remainder of the season when they carried out their intention of going on to Nassau about January 1, 1943. Mrs. Murchie had been kept in bed by poor

health during their stay at Winter Park, and after suffering another heart attack, she died there on December 17, 1942.

At the time of her death Mrs. Murchie had with her in Florida a case containing jewelry valued at $30,234.60 and clothing and other personal effects worth $1,000. Since the time of their marriage in 1931 Mrs. Murchie had always carried this jewelry with her on her travels in Europe, Asia, and America. She intended on this occasion to take it on to Nassau with her. And immediately after her death it was sent by plaintiff to Canada.

Plaintiff, as her executor, in paying to the United States the tax due on her estate, did not include the jewelry and other personal effects mentioned above in the portion of her estate on which he paid the tax. The Commissioner of Internal Revenue, claiming they should have been included, assessed a deficiency estate tax of which $8,077.21 was attributable to the inclusion of this property in the estate. Plaintiff paid this tax to defendant, and after a claim for refund was rejected by the Commissioner has brought suit to recover this sum with interest.

■ Since Mrs. Murchie at the time of her death was neither a citizen of the United States nor a resident thereof, the taxation of her estate was governed by the provisions of 26 U.S.C.A. § 861(a) which reads:

"§ 861. Net estate

"(a) Deductions allowed. For the purpose of the tax the value of the net estate shall be determined, in the case of a nonresident not a citizen of the United States, by deducting from the value of that part of his gross estate (determined as provided in section 811), which at the time of his death is situated in the United States—"

Although by Section 811, all property wherever situated is to be included in the gross estate, the value of the net estate (on which the tax is to be paid) is determined by the subtraction of the allowable deductions not from the whole of the gross estate, but only from that part of it which at the time of her death was "situated in the United States". It is necessary therefore to determine whether the jewelry and other

personal effects which Mrs. Murchie had with her in Florida at the time of her death were at that time "situated in the United States". Plaintiff's contention is that they were not since this property was only transitorily present, and had no established situs here. Defendant contends that all that the statute requires is the fact, here undisputed, of actual physical presence. No question has been raised of the constitutional power of the Congress to tax this property if it wished to do so. The question is solely as to whether Congress did intend that property temporarily present in circumstances such as those presented in this case should be considered property "situated in the United States".

■ The Supreme Court of the United States in interpreting this section of the tax statutes has said, "As to tangibles and intangibles alike, it made the test one of situs, and we think it is clear that the reference is to property which, according to accepted principles, could be deemed to have a situs in this country for the purpose of the exertion of the federal power of taxation." Burnet v. Brooks, 288 U.S. 378, 389, 53 S.Ct. 457, 459, 77 L.Ed 844, 86 A.L. R. 747. An inquiry must be made then whether according to the accepted principles of situs as of the time Congress enacted this section any property physically present in the United States, even though briefly and transiently, acquired a situs here, or whether situs required some greater degree of permanence in its location than we can find with respect to the property here involved.

The traditional rule as to situs of personal property, embodied in the familiar maxim "mobilia sequuntur personam" has undoubtedly many exceptions so that frequently tangible personal property is regarded as having a situs, at least for purposes of taxation, at its actual location independent of the domicile of its owner. But these exceptions do not go so far as to cause property which the owner carries with him while traveling to acquire situs in every place through which he may be at the moment passing, or at which it may temporarily come to rest while he pauses in his journey. Situs, as based on actual

presence of the property, requires a presence which is at least more permanent than that of location at a mere stopping place on a journey.

While I have found no case which has as yet precisely defined what degree of permanence is necessary to constitute situs under section 861(a), there are many cases which clarify the generally accepted meaning of situs which has been held to be implicit in the use of the term "situated" in that section. Burnet v. Brooks, supra. Many of these deal with the constitutional power of the states to tax personal property, where the test was whether the situs of the property could be said to be in the taxing state. In many of these it was held that there was no situs since the property was only transiently within the state. Hays v. Pacific Mail Steamship Co., 17 How. 596, 15 L.Ed 254; Morgan v. Parham, 16 Wall. 471, 472, 21 L.Ed. 302; Ott v. De Bardeleben Coal Corp., 5 Cir., 166 F.2d 509. Or else, where the power of the state to impose the tax was upheld, it was on the basis of the permanent presence of the property or at least in the case of such property as the rolling stock of railroads of the recurrent presence of property of that same type. Union Refrigerator Transit Co. v. Kentucky, 199 U.S. 194 and cases there cited at page 206, 26 S.Ct. 36, 50 L.Ed. 150, 4 Ann.Cas. 493; Pullman's Palace-Car Co. v. Pennsylvania, 141 U.S. 18, 11 S.Ct. 876, 35 L.Ed. 613; City Bank Farmers' Trust Co. v. Schnader, 293 U.S. 112, 55 S. Ct. 29, 79 L.Ed. 228. The latter of these cases affirmed the decision of the three-judge district court in the same case which said: "Actual situs means a little more than simply the place where property is. It excludes the idea of mobile personal property which happens to be in the course of transit in or through the taxing state at the moment when the occasion for taxation arises. It also excludes the idea of property which for some definite purpose of its owner has come to rest within the bound-aries of the taxing state for a brief and limited time." City Bank Farmers' Trust Co. v. Schnader, D.C., 8 F.Supp. 815, 817, 818.

■ Similarly there are many cases in which the courts of the various states, in interpreting a provision of a state statute that property be "situated" in a given place in order to be subject to taxation, have construed it to cover only such property "as is actually located or used within the state with something like permanency." State v. Haight, 30 N.J.L. 428. So the Massachusetts courts have held that the "temporary lodgment or migratory presence of such personal property is not enough to cause it to be 'situated.'" Carlos Ruggles Lumber Co. v. Commonwealth, 261 Mass. 445, 448, 158 N.E. 897, 898. While such state court interpretations do not in any way bind us in construing a federal tax statute, they are persuasive evidence of what was the generally accepted meaning of the term "situated" which the Congress chose to employ.

■■ In view of that generally accepted meaning of the term, the use of it in section 861(a) indicates that Congress intended the estate tax to reach only so much of the property of nonresident aliens as had a definitely established and permanent location here, and not their other property which had no such established connection but was only fortuitously present here at the moment of the owner's death. The court should not construe the words used by Congress to cover the fullest possible extent of its power to tax, when it uses words which in their usually accepted meaning give a lesser scope to the tax. Cf. United States v. Goelet, 232 U.S. 293, 34 S.Ct. 431, 58 L.Ed. 610.

■ The government has contended that its position is supported by an established administrative interpretation of section 861 (a) as embodied in section 81.50 of Treasury Regulations 105.[1] But this merely says

---

[1] 26 CFR, Cum.Supp. Sec. 81.50 "Situs of property. Real estate, tangible personal property, and the written evidence of intangible personal property which is treated as being the property itself are within the United States if physically situated therein. For example, a bond for the payment of money is not within the United States unless physically situated therein. Stock of a domestic corporation, however, constitutes property within the United States, irrespective of where the certificates thereof are physically located."

that the statutory term "situated" means "physically situated". This does not help to clarify our problem, since section 861(a) deals only with estates of nonresident aliens, as to whose property no question of a constructive situs based on the United States citizenship or domicile of the owner can arise. The effect of adding the qualifying word "physically" to the statutory expression makes it clear that no property of such a taxpayer is situated here unless it is physically present in this country. But in view of what has been said as to the accepted meaning of "situs" it cannot mean that the mere fact of physical presence means that in all cases the property is thereby situated here.

Consequently, I conclude that property such as the jewelry and other personal effects involved here, which is physically present in this country only because it was being carried on a journey through this country from one foreign country to another by a nonresident alien owner who happens to die here in the course of that journey, is not property situated in the United States within the meaning of 26 U.S.C.A. § 861(a).

Defendant's motion for summary judgment denied.

Plaintiff's motion for summary judgment in the sum of $8,077.21 with interest and costs is granted and judgment will be entered for the plaintiff.